IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:12-cv-14077-KMM

MICHAEL J. ROWAN,

    Plaintiff,

vs.

CITY OF AVON PARK,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND REMANDING CASE

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint (ECF No. 39). Plaintiff filed a Response (ECF No. 48) and Defendant filed a Reply (ECF No. 49). The Motion is now ripe for review. Upon consideration of the Motion, the Response, Reply, the Amended Complaint (ECF No. 21), the pertinent portions of the record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

Plaintiff Michael J. Rowan is the former Chief of Police of the City of Avon Park. Defendant City of Avon Park is a Florida Municipal Corporation, located in Highlands County, Florida. This action stems from Defendant's termination of Plaintiff from his position as Chief of Police of the City of Avon Park.

---

[1] The facts herein are taken from Plaintiff's Amended Complaint (ECF No. 21). All facts are construed in a light most favorable to Plaintiff.

1

A. The Employment Contract

On March 3, 2011, Plaintiff and City Manager Bruce C. Behrens, on behalf of Defendant, entered into a contract of employment.[2] The contract conferred on Plaintiff "all the powers, duties, and responsibilities of the Chief of Police." Am. Compl., Ex. 1. The contract provided that Plaintiff's employment would continue until terminated by either: (1) the resignation of Plaintiff; (2) the death or permanent disability of Plaintiff; (3) the resignation of Plaintiff at the City Manager's request, which was conditioned upon mutual agreement between the City Manager and Plaintiff; (4) the termination of Plaintiff by action of the City Manager; or (5) termination of the employment contract by its expiration. The employment contract was for a term of sixty (60) months and required Defendant to pay Plaintiff approximately $68,000 annually for services rendered by Plaintiff under the terms of the employment contract.

The employment contract also contained a section entitled "Involuntary Termination and Severance Pay," which provided Defendant the right to terminate Plaintiff "at will by [Defendant] for cause" upon notice provided at least twenty-one days prior to the termination. "Cause" was defined in the employment contract as, *inter alia*, insubordination as to the whole City Commission, abandonment of employment by unreasonable and unexcused failure to appear for work, refusal to fully cooperate in an investigation, violation of the State Code of Ethics, commission of a felony or commission of a misdemeanor involving dishonesty or moral turpitude, and any violation of the Florida Department of Law Enforcement ("FDLE") rules and regulations or loss or suspension of FDLE standards.

The employment contract explicitly provided that Plaintiff was an "unclassified, exempt employee" and that Plaintiff's service was "at the pleasure of the City manager." Id.

---

[2] The validity of the contract, however, is disputed by the Parties and is the subject of the Parties' Cross-Motions for Summary Judgment (ECF Nos. 40–41).

2

Accordingly, as a department head, Plaintiff enjoyed certain protections contained in the City of Avon City Charter (the "Charter").[3] Specifically, Article III, section 10 of the Charter provides, in relevant part, that the City Manager shall, "Appoint and, when the City Manager deems it necessary for the good of the city, suspend, demote or remove all city employees," but that "department heads, assistant department heads and other employees not covered by civil service or collective bargaining agreements shall have the right of a final appeal before the City Council for purposes of contesting any removal." Pl.'s Statement of Material Facts, Ex. 1, at 9–10 (ECF No. 42-1). The Charter expressly states that in any appeal "[t]he rules or [of] procedure . . . shall be set by the City Council but shall accord the person making the appeal due process of law." Id. at 10.

B. The Termination

On April 19, 2011, Interim City Manager Julian Deleon notified Plaintiff that effective immediately, Plaintiff was being placed on administrative leave. Though Deleon's letter to Plaintiff referenced an investigation that was taking place, no further reasons were provided for Deleon's decision to place Plaintiff on administrative leave. Approximately two months later, Deleon sent Plaintiff a second letter, in which Deleon notified Plaintiff that "[i]n accordance with the City Charter and its personnel policies" Plaintiff was being placed on administrative leave

---

[3] Generally a district court cannot consider extrinsic evidence at the motion to dismiss stage of the proceedings. See Speaker v. U.S. Dept. of Health and Human Serv. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002)). There is, however, an exception. "'In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.'" Id. (quoting SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010)). Here, Plaintiff's Amended Complaint explicitly references the Charter, Am. Compl., ¶ 9, and Defendant does not dispute the Charter in its pleadings. See Def.'s Reply, at 1 (ECF No. 49). Alternatively, the Charter is a matter of public record which this Court can take judicial notice of without converting Defendant's Motion to Dismiss into a Motion for Summary Judgment.

3

without pay "pending the completion of the ongoing investigation being conducted by the Polk County Sheriff's Office and a final decision as to what action, if any, to be taken based upon the results of this investigation." Am. Compl., Ex. 3, at 1. Plaintiff claims that while an investigation was referenced in Deleon's communication, no clear statement was provided to Plaintiff regarding the basis for Deleon's decision to place Plaintiff on administrative leave.

On September 6, 2011, Deleon notified Plaintiff that he was considering disciplinary action against Plaintiff, which included the potential termination of Plaintiff's employment contract with Defendant. In his letter, Deleon listed four reasons that potentially supported disciplinary action against Plaintiff:

1. On or about early April of 2011, I received complaints of inappropriate recordings by you. At this time, when I specifically asked you about this, you denied that there were any recordings of active investigations. I asked if you had any active cases involving City Officials or employees which would justify recordings, and you also denied this. Your responses to my questions were untruthful and insubordinate.

2. On or about April of 2011, during my conversation with you in which you were upset over the City Council's actions to revisit your employment contract as well as the presence of two Sheriff's deputies at the City Council meeting, you angrily threatened that you had "nine inches of paper work" and recordings that "would lock everyone up." You further stated that you wanted to be left alone; otherwise, you would get the last fucking. When I inquired whether you were obligated to act on incriminating material; whether you could hold this material forever over someone? You said "yes", meaning that you had no obligation to act on this.

3. On or about April of 2011, after I provided a memorandum to you regarding employment expectations, you ordered Police Commander Jason Lister to completely wipe your computer's hard drive. This resulted in the operation of the ERASER software on a City owned Computer. Your directive to Lister resulted in the destruction of all data on a City owned computer as discovered by the Polk County Sheriff's computer forensics staff.

4. On or about April of 2011, after I provided a memorandum to you regarding employment expectations, you opted to obtain a Police case number, and admit evidence for an investigation which was over 14 months old. During your investigation into the conduct of City officials, you failed to follow proper

> procedure in that you failed to obtain a police case number and admit evidence for approximately 14 months.

Am. Compl., Ex. 5, at 1. Thereafter, Plaintiff was afforded an opportunity to appear at a pre-disciplinary conference with Deleon. The conference was held on September 27, 2011 and was attended by Plaintiff, Deleon, and attorneys for Plaintiff and Defendant. Plaintiff provided a verbal statement as well as written documentation for Deleon to consider as he determined whether to terminate Plaintiff's employment.

On October 19, 2011, Deleon notified Plaintiff that he had decided to terminate Plaintiff's employment with Defendant for the reasons cited in his September 6, 2011 letter to Plaintiff. Approximately two weeks later, counsel for Plaintiff requested in a letter, pursuant to Plaintiff's employment contract and the City Charter,

> due process in the matter of [Plaintiff's] termination, including, but not limited to, a full post-termination hearing before a neutral, detached magistrate (hearing officer); the right to confront and cross examine witnesses against him; the right to counsel; the right to call (and have subpoenaed) witnesses on his behalf; as well as a detailed exposition of the charges against him (in order that we may know what facts are in dispute); and an explication of how whatever those charges may be give the city cause to end the contract with him.

Am. Compl., Ex. 6, at 1. Counsel for Plaintiff also requested that Deleon inform Plaintiff whether Plaintiff's termination was for cause, and if so, which provision of the contract was violated which could justify Plaintiff's termination.

Subsequent to Plaintiff's termination, Defendant abolished the position of Chief of Police and vested the powers of the Chief of Police in a "Public Safety Director" who is now responsible for both the fire and police departments. To date, no post-termination hearing has been held.

5

On June 20, 2011, Plaintiff filed a Complaint and Petition for Mandamus in Florida state court in which Plaintiff sought a Writ of Mandamus reinstating him as Chief of Police.[4] On February 20, 2012, Plaintiff filed an Amended Complaint. The Complaint alleges breach of contract (Count I), retaliation in violation of Florida's Whistle Blower Statute (Count II), and deprivation of due process in violation of the U.S. Constitution and the Florida Constitution (Count III). On March 2, 2012, Defendant removed the instant action to this Court. Defendant now seeks to dismiss Count III of Plaintiff's Amended Complaint for failing to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Id. at

---

[4] Plaintiff's original mandamus petition was filed prior to his termination and sought reinstatement to his position as Chief of Police. The proceedings, however, did not conclude prior to Plaintiff's termination and therefore the petition was denied as moot by the state court. It is important to note that Plaintiff never filed a mandamus petition requesting the state court to compel a hearing that comported with due process of law.

6

1950. A complaint must also contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

### III. ANALYSIS

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. As the United States Supreme Court has observed, "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). To state a claim alleging the denial of procedural due process requires proof of three elements: "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)). Here, Plaintiff claims that he was deprived of his property interest in his employment without constitutionally adequate process.

As an initial matter, this Court does not interpret Plaintiff's Due Process claim as relating to or arising out of Defendant's abolition of the position formerly held by Plaintiff. This is because "'the legislative power of a State, except so far as restrained by its own Constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service.'"

Higginbotham v. City of Baton Rouge, 306 U.S. 535, 538 (1939) (quoting Newton v. Mahoning Cnty. Comm'r, 100 U.S. 548, 559 (1879)); 63C Am. Jur. 2d Public Officers and Employees § 47 (2012) ("A legislature may abolish any office it creates without infringing upon the rights of the officer affected. Absent any express constitutional limitation, a legislative body has full and unquestionable power to abolish an office of its creation or to modify the terms of the office, in the public interest, even though the effect may be to curtail an incumbent's unexpired term. Thus, absent some constitutional prohibition, an office created by the legislature may be abolished by the legislature during the term of an incumbent, and the office holder may be ousted prior to the completion of his or her term."); see also Goldsmith v. Mayor & City Council of Baltimore, 845 F.2d 61, 65 (4th Cir. 1988) ("The Supreme Court has ruled time and time again that, under the federal constitution, a legislative body, including municipal councils, has the unfettered authority to create, alter and abolish such positions."). Accordingly, there is no property right in the continued existence of plaintiff's position and therefore no deprivation that could give rise to a § 1983 claim. See Goldsmith, 845 F.2d at 65.

Thus, this Court limits its inquiry to the period between Plaintiff's termination and Defendant's decision to abolish the position formerly held by Plaintiff. At issue is whether Plaintiff was denied constitutionally-adequate process to contest his termination before his position was abolished by Defendant.[5] The United States Court of Appeals for the Eleventh Circuit has held that where a "plaintiff has shown a deprivation of some right protected by the due process clause," courts are instructed to "look to whether the available state procedures were adequate to correct the alleged procedural deficiencies." Cotton v. Jackson, 216 F.3d 1328, 1331

---

[5] Again, this Court acknowledges that Defendant disputes the validity of the employment contract. See supra note 2. For the purposes of this opinion, however, this Court accepts Plaintiff's claim, as the non-movant, that the employment contract is valid.

8

(11th Cir. 2000). "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." Id.

In Cotton, the plaintiff was terminated from his position as Director of Continuing Education for South Georgia College after several employees complained that plaintiff had sexually harassed them. The plaintiff was denied a post-termination hearing and subsequently sued South Georgia College for depriving him of his federal due process rights. Reversing the district court's denial of defendant's motion for summary judgment, the Eleventh Circuit held that the plaintiff had available to him the judicial remedy of mandamus to compel a hearing, and for this reason, plaintiff failed to state a claim for a procedural due process violation. Id. at 1329–33.

Not unlike the plaintiff in Cotton, Plaintiff also had available the judicial remedy of mandamus. In Florida, "Mandamus may not be used to establish rights; instead, a party petitioning for a writ of mandamus must establish a clear legal right to the requested relief, an indisputable legal duty, and have no adequate remedy at law." Coldiron v. Seminole Cnty. Sheriff's Dept., 936 So. 2d 42 (Fla. 5th Dist. Ct. App. 2006). Here, Plaintiff possessed a clear legal right, by virtue of the City Charter, to "a final appeal before the City Council [consistent with due process of law] for purposes of contesting any removal." Pl.'s Statement of Material Facts, Ex. 1, at 9–10. The Charter affords Defendant no discretion with respect to whether Plaintiff is entitled to such a hearing. Consequently, an adequate state remedy was available and plaintiff cannot rely on his failure to avail himself of that remedy to claim he was deprived of

procedural due process.[6] Therefore, Plaintiff's Due Process claim fails as a matter of law to the extent it seeks relief under the United States Constitution.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint (ECF No. 39) is GRANTED IN PART. Count III of Plaintiff's Amended Complaint (ECF No. 21) is DISMISSED WITH PREJUDICE to the extent it seeks relief under the United States Constitution. As no federal claims remain, this Court exercises its discretion and declines to assert supplemental jurisdiction over the remaining state law claims. See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004). It is therefore

ORDERED AND ADJUDGED that this case is REMANDED to the Tenth Circuit Judicial Circuit Court in and for Highlands County, Florida. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this __ day of July, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

---

[6] The Parties exert considerable effort arguing the adequacy of the mandamus remedy. To be adequate, however, "the state procedure need not provide all the relief available under section 1983. Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (citing McKinney v. Pate, 20 F.3d 1550, 1564 (11th Cir. 1994) (en banc)). In the instant case, it is clear that the mandamus remedy would have compelled Defendant to provide the hearing Plaintiff requested in his post-termination letter to Defendant. See Am. Compl., Ex. 6, at 1.